UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:15-cr-198 (JAM) |
| ARTHUR STANLEY,<br>*Defendant*. | |

ORDER RE LIMITATIONS ON TESTIMONY OF SGT. O'HARE

The Government proposes to call as a witness Sergeant Johnmichael O'Hare of the Hartford Police Department. Defendant has moved to limit the scope of his testimony. Docs. #66 & #69. In light of the concerns expressed by defendant and my review of other transcripts of Sgt. O'Hare's prior testimony, I will grant defendant's motions in large part and conclude that Sgt. O'Hare's testimony shall be subject to specific limitations as set forth in this ruling.

BACKGROUND

As best as I can tell, the Government will rely on Sgt. O'Hare as a mixed fact/expert witness.[1] As a fact witness, Sgt. O'Hare will reportedly testify about particular photographs of particular persons that he knows from his investigations in Hartford. To the extent that he has participated in particular surveillance or warrant activities (and to the extent that the Government discloses the underlying information required pursuant to Fed. R. Crim. P. 26.2), I suppose he

---

[1] The Government has not been clear about the capacity in which Sgt. O'Hare will testify. According to the Government's written submission, Sgt. O'Hare will testify as an expert, and the Government makes no mention of any factual testimony that it might intend to elicit from Sgt. O'Hare. Doc. #81. By contrast, according to its representations during the course of the pre-trial hearing, Sgt. O'Hare will testify about matters within his personal knowledge and in a manner consistent with his testimony in other cases in the federal courts of Connecticut. For one of those cases, Sgt. O'Hare was offered *solely* as a fact witness, and the Government expressly disclaimed that he was presenting expert testimony. *See United States v. McDade*, 14cr81 (JAM), Doc. #1076 at 54–55 ("we didn't notice him as an expert" and "[h]e's not really testifying as an expert," but "he's testifying about on his experience in the North End of Hartford," and "[h]e's going to identify the various defendants in this case"). The fact that the Government itself has not been clear about the capacities in which Sgt. O'Hare may testify reinforces my conclusion that, if he is going to offer both factual and expert testimony, then his testimony in this trial should be bifurcated in order to reduce the risk of jury confusion and the possibility of introducing inadmissible evidence.

1

might also testify concerning other facts known to him about which he has first-hand knowledge and that is not based on statements from third parties or other law enforcement officials (*e.g.*, testimony of his surveillance activity of particular persons).

As an expert witness, Sgt. O'Hare will reportedly testify "as an expert to explain the presence of identifiable gangs in Hartford from approximately 2008 to 2011, including their method of operation and membership, structure, locations, graffiti, and drug dealing and use of guns." Doc. #81 at 1. The Government further states that "Sergeant O'Hare's testimony as a gang expert will be directed at more limited specialized knowledge concerning the existence of drug trafficking gangs in Hartford, the geographical areas controlled by the groups, and the organization, structure, and territory of these groups in the City of Hartford." *Id.* at 7.

## DISCUSSION

In light of the transcripts I have reviewed and in light of recent case law of the Second Circuit, I have substantial concerns about the scope and content of Sgt. O'Hare's testimony. Accordingly, I will limit the testimony of Sgt. O'Hare as set forth below.

### 1. Bifurcation of Fact/Expert Testimony

The Second Circuit has held that a witness offering "dual testimony," *i.e.*, testifying as both an expert and fact witness, "is not objectionable in principle." *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000). Nevertheless, the Second Circuit "has frequently cautioned as to the risks presented by allowing a law enforcement officer to testify as both a fact and an expert witness." *United States v. Barrow*, 400 F.3d 109, 124 (2d Cir. 2005). Accordingly, the Second Circuit has "urged district courts to exercise particular vigilance to ensure that the witness's dual role does not impair the jury's ability properly to evaluate credibility," and it has instructed that "a court must ensure that the reliability of the witness's expert opinions is not improperly

enhanced by a jury's assumption that the witness has knowledge of the defendant's activities that goes 'beyond the evidence at trial.'" *Ibid*; *see also United States v. Cruz*, 363 F.3d 187, 195 (2d Cir. 2004) (noting "[t]he heightened risk that a law enforcement official will stray from the scope of his expertise if he also functions as a fact witness" and that it "is particularly troubling because expert testimony provided under these circumstances is especially likely to raise concerns about juror confusion under Rule 403").

In light of these concerns, I conclude that, to the extent that Sgt. O'Hare will testify as both a fact and expert witness, I will require the Government to present his factual and expert testimony in bifurcated, distinct phases of his examination and to be subject to separate cross-examination for each phase. I will give the jury the following cautionary instruction at the time that Sgt. O'Hare testifies:

> Ladies and gentleman, Sgt. Johnmichael O'Hare will testify in this case as both a fact witness and a so-called expert opinion witness. First, he will testify as to certain facts about which he has first-hand knowledge based on his personal observations. After he has testified about these factual matters, he will be subject to cross-examination by the defense.
>
> Second, he will testify anew as an expert opinion witness on the basis of his law enforcement experience involving drug trafficking gangs in Hartford. The parties in a case are permitted to call expert witnesses if the witness may have knowledge about matters that are beyond the ordinarily knowledge of an average layman. Specifically, as an expert witness, Sgt. O'Hare will be permitted to testify on the basis of his prior experience concerning his opinion about the following subject areas: (1) the existence of and names of drug trafficking gangs in Hartford from 2008 to 2011; (2) the geographical areas controlled by particular drug trafficking gangs in Hartford from 2008 to 2011; (3) the general organization, hierarchy, and structure of drug trafficking gangs in Hartford from 2008 to 2011; and (4) any practices of drug trafficking gangs in Hartford from 2008 to 2011 concerning the use of graffiti or markers to signify their respective territories.
>
> Of course, although Sgt. O'Hare will testify in part as an expert witness, it is for you to evaluate his credibility and the persuasiveness of his testimony about any facts and of his opinions, and you should not automatically credit his testimony on the grounds that he is a law enforcement officer or that he is testifying in part as an alleged expert witness.

*See also United States v. Rios*, 830 F.3d 403, 414, 416 (6th Cir. 2016) (noting that jury should be informed of an officer's dual role as a fact witness and expert witness and that law enforcement witness's "overall presentation as a dual fact-expert witness without further demarcation or explanation to the jury was in error"). To the extent that the Government anticipates that the scope of Sgt. O'Hare's factual or expert testimony will differ from that described in this ruling, the Government should advise the Court such that the Court may consider whether to permit such testimony and to tailor the scope of this limiting instruction accordingly.

### *2. Limitations on Scope of Expert Testimony*

The Second Circuit "has approved the admission of expert testimony in organized crime cases to help explain the operation, structure, [requirements for] membership, and terminology of organized crime families." *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007). But the Second Circuit has also repeatedly and recently made clear that the presentation of such expert opinion testimony may not be a subterfuge for the admission of improper, hearsay-based facts from the officer's or other law enforcement investigations. *See United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (parts of gang expert's testimony "that involved purely factual matters [such as about the number of firearms seized, drug arrests, and murders involving purported members of a particular gang] as well as those in which [the expert witness] simply summarized the results of the Task Force investigation," were improperly admitted and "fell far beyond the proper bounds of expert testimony")*; see also United States v. Escobar*, 462 F. App'x 58, 62 (2d Cir. 2012) (gang expert's testimony was erroneously admitted for the reasons explained in *Mejia*: testimony "went far beyond interpreting jargon or coded messages, describing membership rules, or explaining organizational hierarchy," and was derived from hearsay); *United States v. Rubi-Gonzalez*, 311 F. App'x 483, 487 (2d Cir. 2009) (expert's testimony that gang dealt in marijuana

4

and cocaine, stole cars, and murdered rival gang members in turf wars was inadmissible, as testimony concerned matters that jury would have understood unaided, and went far beyond interpreting jargon or coded messages, describing membership rules, or explaining organizational hierarchy).

In order to ensure that Sgt. O'Hare's expert testimony will not stray from or exceed its proper limits, the Government will be required at trial to structure the presentation of Sgt. O'Hare's expert testimony as follows:

(1) to lay a foundation for Sgt. O'Hare's expertise;

(2) to inquire whether Sgt. O'Hare has an opinion about the following areas that the Government has cited as grounds for his expert testimony:

- (a) the existence of and names of drug trafficking gangs in Hartford from 2008 to 2011;
- (b) the geographical areas controlled by particular drug trafficking gangs in Hartford from 2008 to 2011;
- (c) the general organization, hierarchy, and structure of drug trafficking gangs in Hartford from 2008 to 2011;
- (d) any practices of drug trafficking gangs in Hartford from 2008 to 2011 concerning the use of graffiti or markers to signify their respective territories; and

(3) to inquire what Sgt. O'Hare's opinion is with respect to each of these areas of alleged expertise.

### 3. Additional Limitations on the Content of Sgt. O'Hare's Testimony

In light of the concerns identified above, the Court sets forth the following additional limitations on the scope of Sgt. O'Hare's factual and expert testimony:

*Prohibition on Hearsay Testimony.* Sgt. O'Hare may not testify during the course of either his factual testimony or his expert opinion testimony about any specific transaction or illegal activity unless he has personally witnessed such transaction or illegal activity (as distinct

from whether he heard about such transaction or illegal activity from any subject of his investigations or from another law enforcement officer or by reading about it from any other source). *See* Fed. R. Evid. 703 (permitting expert to base an opinion on non-admissible evidence but cautioning that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect"). To the extent that the Government seeks to elicit factual information from Sgt. O'Hare, the Government's questioning shall make clear prior to the eliciting of such facts whether Sgt. O'Hare has the requisite personal, first-hand knowledge of such facts and what the basis for his knowledge is.

*Prohibition on Expert Opinion Testimony About Particular Narcotics and Use of Violence and Firearms.* Beyond offering his opinion that gangs in Hartford were engaged generally in drug trafficking activity, Sgt. O'Hare may not offer during the course of his expert opinion testimony any description of particular drugs trafficked by any gang or about any gang's use of violence or firearms. These are factual matters, and the jury does not need an expert's opinion about the obvious proposition that drug dealers use violence and firearms to protect their drug trafficking activity. *See, e.g.*, *Rios*, 830 F.3d at 415–16 (error to allow government's mixed fact/expert gang witness to testify about "specific criminal actions" of the gang, including how members of the gang use guns and use violence, because "[m]uch of that information is well within the average juror's ability to understand, making expert testimony unnecessary").

*Prohibition on Person-Specific and Gang-Specific Opinion Testimony.* During the course of his expert opinion testimony, Sgt. O'Hare shall not offer any opinion that the defendant or any other person (such as Melkuan Scott or other persons whose photographs that Sgt. O'Hare might identify) was a member of or involved with any particular gang or that the defendant or any

6

particular person was involved in any unlawful activity. These are factual matters about which the jury does not need an expert opinion. *See, e.g.*, *United States v. Garcia*, 793 F.3d 1194, 1213 (10th Cir. 2015) (noting that "there is no sociological expertise in testifying to gang members' specific travels, specific uses of gang funds, or commission of specific crimes"), *cert. denied*, 136 S. Ct. 860 (2016).

Similarly, to the extent that Sgt. O'Hare's expert testimony may reference the WestHell gang among other gangs in Hartford, he shall not express any expert opinion that is specific to the WestHell gang as apart from any other alleged drug trafficking gang in Hartford. The Government has not served notice of any intent to elicit such gang-specific expert testimony.

During the course of his *factual* testimony, Sgt. O'Hare may testify if he has first-hand personal knowledge concerning the geographical location where he has observed particular persons or that he has seen particular persons in the company of other particular persons. He may not, however, offer his *opinion* that any particular persons were (by reason of their location or other information known to Sgt. O'Hare) members of any gang or were involved in any unlawful activity.

The Government shall ensure that Sgt. O'Hare has read this ruling and that any questions he has about its scope or application have been addressed. The parties may likewise direct any questions about the scope of this ruling to the Court prior to Sgt. O'Hare's testimony. The limitations set forth in this ruling presuppose that the defense does not "open the door" to broader areas of inquiry by means of its cross-examination.

**CONCLUSION**

Defendant's motions *in limine* to limit the testimony of Sgt. O'Hare (Docs. #66 & #69) are GRANTED in part, insofar as Sgt. O'Hare's testimony shall be subject to the limitations set forth in this ruling.

It is so ordered.

Dated at New Haven this 4th day of December 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge